UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION September 10, 2007

CRESTMARK BANK,
 a Michigan chartered bank,

   Plaintiff,

vs.            Case No: 07-12841
             Honorable Victoria A. Roberts

GOLDLEAF FINANCIAL SOLUTIONS, INC.,
 A Tennessee corporation,

   Defendant.
_____/

## ORDER HOLDING MOTION FOR REMAND IN ABEYANCE PENDING RECEIPT OF ADDITIONAL INFORMATION

### I. INTRODUCTION

   This matter is before the Court on Plaintiff's Motion to Remand to Oakland County Circuit Court.  For the following reasons, the Court holds its order on this motion in abeyance, pending receipt of additional information.

### II. BACKGROUND

   Plaintiff Crestmark Bank filed a Complaint for Declaratory Relief against Goldleaf Financial Services, Inc. ("Defendant").  Plaintiff seeks a judicial declaration that (1) the business of Crestmark's Bank Alliance Program does not compete with the business of Goldleaf; (2) Crestmark's Bank Alliance program's employment of Goldleaf's former employees is proper and did not induce a breach of their employment agreements; and

1

(3) Crestmark has no obligation to agree in writing not to solicit additional Goldleaf employees. *See* Df. Exhibit A, Complaint for Declaratory Relief. Crestmark also seeks attorney fees. *See id.*

On July 9, 2007 Defendant filed a notice of removal, claiming diversity jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(a). *See* Notice of Removal at 1. This motion to remand argues that the claim does not meet the required jurisdictional amount of $75,000. *See* Motion to Remand at 1.

The contract at issue is the employment contract signed by former Goldleaf employees. It prohibits them:

> [F]or a period of one year immediately following separation of the Employee from employment for any reason...directly or indirectly [from being] employed by or [to] consult with personally or on behalf of any other person, corporation or entity whose business, products or services are competitive with the business, products or services of Company. For the purposes of this Agreement, a client bank may be a competitor.

Plaintiff Exhibit A. Or,

> [F]or a period of 18 months immediately following separation from employment with [Goldleaf] for any reason...on [their] own behalf, or on behalf of any person or business contact [to] attempt to communicate with any Customer or prospect of Company in the Territory regarding any product or service which might be considered competitive to any of [Goldleaf's] products or services...with which employee had contact during the last two years while employee [was] employed by [Goldleaf].

*Id.*

Crestmark and Goldleaf both have two relevant programs that concern this lawsuit. All four programs relate to the business receivables lending industry. Goldleaf offers its Business Manager Program and Lending Network programs. The Business Manager Program matches interested businesses with a consortium of business receivables lenders that have enrolled in the program. The Goldleaf Lending Network

Program matches interested businesses that are unable to secure approval from mainstream lenders, with a small group of registered second-tier market lenders.

Crestmark offers its general receivables lending and its Bank Alliance Program. Crestmark's general lending program provides direct receivables loans to interested businesses that apply directly to Crestmark. Crestmark's Bank Alliance program creates contractual agreements with banks to encourage them to refer their denied business receivables loan applications to Crestmark.

The employees whose contracts are at issue in this suit left Goldleaf and now work at Crestmark. *See* Defendant's Response at 4; Plaintiff's Brief in Support of Motion to Remand at 6. At the time of removal, Crestmark had hired between 3-4 former Goldleaf employees. *See* Defendant's Response at 4; Defendant's Notice of Removal at 4. In oral argument, Crestmark stated that one of the employees at issue resigned from Crestmark since the removal of the case to this Court.

## III. ARGUMENTS

### a) Plaintiff

Plaintiff argues that this Court lacks jurisdiction under 28 U.S.C. §1441(a) and 28 U.S.C. § 1332 because the claim does not exceed the required $75,000 jurisdictional amount. Plaintiff's first assertion is that because the contract at issue contains no-compete and non-solicitation provisions that are "excessive," "overbroad," "ambiguous, and "vague" the contract is not enforceable under Michigan law. *See* Pl. Bf. in Supp. of Rem. at 11. Plaintiff argues that since the contract it is invalid, the "object of litigation" has no value and does not reach the required jurisdictional amount of $75,000. *See* Pl.

Bf. in Rep. at 11-12; Plaintiff's Brief in Support of Remand at 1; *id.* at Exhibit A.

Plaintiff's second argument is that it is not in competition with Defendant. Plaintiff says that even if the employment contract at issue is *enforceable,* it is not *applicable* because the contract prohibitions speak only to instances in which entities "are competitive" or "might be competitive." *See* Pl. Bf. in Supp. of Rem. at 13-14; *id.* at Exhibit A. Plaintiff therefore argues "the object of litigation" (in Plaintiff's view the employment contract itself) does not meet the required jurisdictional amount. Plaintiff makes a similar "inapplicability" argument based on the fact that plaintiff's new employees "had little or no contact with the Goldleaf Lending Network" and that "some of the non-compete and non-solicitation provisions...have expired or will soon expire." *See* Pl. Bf. in Supp. of Rem. at 13,14. Plaintiff argues that the profits of the Goldleaf Lending Network are an inappropriate measure of the jurisdictional amount because the employees at issue "had little or no contact with [that program]." *See* Pl. Bf. in Supp. of Rem. at 15.

Plaintiff's third argument is that Defendant may have to prove the jurisdictional amount of $75,000 to a "legal certainty" instead of a "preponderance of the evidence." *See* Pl. Bf. in Supp. of. Rem. at 10. Plaintiff relies on *Goldsmith v. Sutherland* to support this assertion. *See* Pl. Bf. in Supp. of Rem. at 10; *Goldsmith v. Sutherland*, 426 F.2d 1395 (6th Cir. 1970).

**b) Defendant**

Defendant's first argument is that the correct burden of proof is a preponderance of the evidence and not the "legal certainty" suggested by Plaintiff. *See* Df. Bf. in Rep. at 6. Defendant further suggests in a footnote that "if there is a place for 'legal certainty' it

4

is on plaintiff's shoulders." *Id.* at 5 n.2. Plaintiff also asserts that the "object of litigation" is the value of the contractual rights from the Defendant's point of view. *See id.* at 6-7. This approach requires consideration of Defendant's previous profits in the sector in which the employees worked, or the compensation previously paid by Goldleaf to the employees at issue. *See id.* at 8. Defendant argues that whether calculated by the recent profits of their own Lending Network program or the amount previously paid to the employees, the value is certainly higher than $75,000. *See* Df. Rep. at 6.

Defendant's second point is that the majority of Plaintiff's argument about the would be "non-value" of the contract is merit based, and should not be the basis for the Court's decision. *See* Df. Res. at 7. Defendant's argument continues that even if the merits were relevant, Defendant's points on these issues are incorrect because the contract is not invalid under Michigan law; Michigan's choice of law provision applies Tennessee law (which supports restrictive covenants), and the parties are in competition. *See id.* at 7-8.

## III. ANALYSIS

A civil case brought in state court may be removed by a defendant to federal district court if the case could have originally been brought in federal court. *See* 28 U.S.C. §1441(a). District courts have original "diversity" jurisdiction over any civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between citizens of different states. 28 U.S.C. §1332 (a)(1).

### i) Diversity

For the purpose of determining citizenship for diversity jurisdiction "a corporation

shall be deemed a citizen of any State in which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332. The two parties are citizens of different states. "Crestmark is a bank chartered in the state of Michigan with its principal place of business in Oakland County, Michigan." Defendant's Notice of Removal at 2. "Goldleaf is a corporation incorporated by the state of Tennessee with its principal place of business in Tennessee." *Id.* Plaintiff does not contest the diversity of citizenship. *See* Df. Res. at 1.

### ii) Jurisdictional Amount

The contested issue is whether the jurisdictional amount in controversy of $75,000 has been met. *See* 29 U.S.C. § 1332(a). As this Court previously held in *Planning & Dev. Dep't v. Daughters of Union Veterans*, "in assessing whether the amount-in-controversy requirement is met...the Court must determine: 1) the proper measure of the amount-in-controversy; and 2) whether Defendants have carried their burden." *Planning & Dev. Dep't v. Daughters of Union Veterans,* 2005 U.S. Dist. LEXIS 31164*,* 17 (E.D. Mich. 2005).

### A) Burden of Proof

Normally, in determining the amount in controversy "the sum claimed by the plaintiff controls" for the purposes of the jurisdictional amount. *Everett v. Verizon Wireless*, 460 F.3d 818, 822 (6th. Cir. 2006). The value for the jurisdictional amount is clear and easily identified when the amount claimed is stated in the complaint itself. However, the jurisdictional amount in cases in which the plaintiff seeks declaratory relief is sometimes less straightforward. The question is further complicated when the court must consider an action following removal by a defendant and a subsequent motion to

remand by a plaintiff.  In the seminal case of *Gafford v. General Elec. Co.*, the Sixth Circuit held that when considering plaintiff's motion to remand after removal from state court by defendant in a claim in which "plaintiff seeks to recover some unspecified amount that is not self-evidently greater or less than the federal amount," the defendant must prove jurisdiction by a "preponderance of the evidence." *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (discussing the three different standards applied by previous courts and deciding that preponderance of the evidence is the most appropriate for this type of case) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753, 763 (E.D. Mich. 1990)); *see also Everett v. Verizon Wireless*, 460 F.3d 818 (6th Cir. 2006) (citing to *Gafford* for the correct standard).

Plaintiff cites to *Goldsmith v. Sutherland* as support for the proposition that defendant must prove the jurisdictional amount "to a **legal certainty**." *See* Pl. Bf. in Rep. at 9 (emphasis in original); *Goldsmith v. Sutherland*, 426 F.2d 1395 (6th Cir. 1970). Plaintiff's characterization of that case's holding is inaccurate, and misleading.  First, although it is not dispositive, this Court notes that *Goldsmith* involves federal question jurisdiction (when there was also an amount in controversy requirement) and not the diversity jurisdiction at issue here. *See id.*  Second, *Goldsmith's* holding is based on a finding that the constitutional claim was "incapable of valuation."  These differences make *Goldsmith* easily distinguishable. *Id.* at 4-5.  In any event, *Goldsmith* does not establish the standard for the burden of proof in a removal action in which plaintiff attempts to avoid federal jurisdiction and a removing defendant attempts to sustain it (however these points do not disqualify *Goldsmith* from being relevant to the

subsequently discussed question of "point of view").  Instead, *Goldsmith* describes the

burden of proof on the defendant when *a plaintiff originally files in federal court* and

attempts to *maintain* jurisdiction there.  These two situations require different

approaches and therefore different standards of proof.  As explained in *Gafford*:

> In a cause instituted in the federal court the plaintiff chooses his forum. He
> knows or should know whether his claim is within the statutory requirement
> as to amount. His good faith in choosing the federal forum is open to
> challenge not only by resort to the face of his complaint, but by the facts
> disclosed at trial, and if from either source it is clear that his claim never
> could have amounted to the sum necessary to give jurisdiction there is no
> injustice in dismissing the suit.

*Gafford*, 997 F.2d at 157.  However,

> [The situation is different] in the case of a suit instituted in a state court and
> thence removed. There is a strong presumption that the plaintiff has not
> claimed a large amount in order to confer jurisdiction on a federal court or
> that the parties have colluded to that end. For if such were the purpose suit
> would not have been instituted in the first instance in the state but in the
> federal court.

*Id.*

This Court agrees with Defendant's description of the state of Sixth Circuit

precedent: that the removing defendant must prove the jurisdictional amount by a

preponderance of evidence when "plaintiff seeks to recover some unspecified amount

that is not self-evidently greater or less than the federal amount." *Gafford v.* 997 F.2d at

158; *See Planning,* 2005 U.S. Dist. at 7-8.

**B) Amount-in-Controversy**

As noted by this Court in *Planning*, "in actions [such as the one before this Court]

seeking declaratory or injunctive relief, it is well established that the amount-in-

controversy is measured by the value of the object of the litigation." *Planning*, 2005 U.S.

Dist. LEXIS at 17 (quoting *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347 **(1977)).**

### C) Object of Litigation

Having determined that (1) the defendant bears the burden of proving the jurisdictional amount by a preponderance of the evidence, and (2) the proper measure of the amount-in-controversy is the "object of litigation," this Court now turns to determining what the "object of litigation" is and how it should be measured.

A Sixth Circuit case directly on point guides this Court's analysis. In *Great Lakes Spice Co. v. GB Seasonings, Inc.*, 2005 U.S. Dist. LEXIS 9112 (E.D. Mich. 2005), the Court considered plaintiff's motion to remand following defendant's removal. Plaintiff argued that the jurisdictional amount was not reached. Like the case before this Court, *Great Lakes* involved an action for declaratory relief regarding a no-compete employment contract. *Great Lakes* found that the object of litigation was the "potential losses to [plaintiff] from the enforcement of the... non-compete clause." *Great Lakes*, 2005 U.S. Dist. LEXIS at 5. The court also determined that the value of the contract was the "amount in controversy *if the court sided with defendants*," and not whether or not the contract was actually valid. *See Great Lakes.*, 2005 U.S. Dist. LEXIS at 5 (E.D. Mich. 2005) (emphasis added) ("Plaintiffs respond that the five-year non-compete clause is not valid and the value of the claim is therefore nothing. However, this is an argument on the merits of the case, not one regarding the potential amount in controversy if the court sided with defendants.").

Had the facts of *Great Lakes* been different, this Court could rest its entire

opinion on that case and halt its analysis here. However, despite articulating the proper standard for identifying and measuring the "object of litigation," *Great Lakes* was not forced to substantively apply its own standard to determine a specific dollar amount. In *Great Lakes,* the court did not need to specifically determine the "potential losses to [plaintiff] from the enforcement of the... non-compete clause" because it found that the enforcement of the employment contract against the plaintiff would necessarily be above the $141 required to bring the claim to the jurisdictional amount when combined with other claims. *Great Lakes*, 2005 U.S. Dist. LEXIS at 5.

Despite this Court's own previous holding that the "object of the litigation" is determined by "the relief sought by the plaintiff, and the value of the object of the litigation (the amount-in-controversy) is the potential loss to the plaintiff if relief is denied," as well as the directly on point Sixth Circuit precedent of *Great Lakes*, neither Plaintiff nor Defendant fully applies this correct standard in their briefs. *Planning*, 2005 U.S. Dist. LEXIS at 17; *see Great Lakes*, 2005 U.S. Dist. LEXIS 9112. Plaintiff and Defendant affirmatively argue, or do not contest that the value of the "object of litigation" should be measured from the point of view of the Defendant. *See* Pl. Rep. at 6-7; Df. Res. in Opp. at 6-7.

Unfortunately, this confusion is not surprising. As noted by the Sixth Circuit in *Everett v. Verizon Wireless, Inc.*, the question of whose viewpoint the object of litigation should be measured from "poses a 'jurisdictional morass' because 'there is a circuit split as to whether a court may determine the amount in controversy from the perspective of either party (the 'either viewpoint rule') or whether a court may only consider the plaintiff's viewpoint.'" *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006),

(quoting Olden v. Lafarge Corp., 383 F.3d 495, 503 n.1 (6th Cir. 2004)).  The Sixth

Circuit has specifically declined to take a side on the issue, and has left district courts

within the circuit to make the determination on their own. *See id.* ("the question poses a

"jurisdictional morass" because "there is a circuit split...we need not resolve the

question today.").

Nonetheless, this Court found in *Planning* that consideration of precedent

suggests when the plaintiff is seeking to remand a removed claim for declaratory relief,

"the 'object of the litigation' is determined by the relief sought by the plaintiff, and the

value of the object of the litigation (the amount-in-controversy) is the potential loss to the

plaintiff if relief is denied." *Planning*, 2005 U.S. Dist. LEXIS at 20.  In reaching this

conclusion this Court first analyzed the Supreme Court decision in *Hunt v. Washington*

*State Apple Advertising* Comm'n, 432 U.S. 333 (1977), and found it defined the object

of litigation as "the right of the [Plaintiff] to conduct their business in the...market free

from the interference of the challenged statute.  The value of that right... was the loss

the apple growers would suffer from the statute's enforcement." *Planning*, 2005 U.S.

Dist. LEXIS at 18.  Turning to the Sixth Circuit's decision in *Cincinnati Insurance Co. v*

*Zen Design Group, Ltd.*, 329 F.3d 546 (6th Cir. 2003), this Court found that *Zen*

measured the value of the object of litigation in a suit by an insurer seeking a

declaratory affirmation that it was not obligated "to defend or indemnify its insured in a

lawsuit brought against the insured," by "the amount the insured incurred in defending

itself." *Id.* at 18-19.  This amount represented the plaintiff's liability if the defendant won

the case.  Lastly, this Court analyzed *Great Lakes supra*, and found that it held that the

correct measurement was the "the potential losses plaintiffs would suffer if the non-

compete agreement was enforced." *Id.* at 19. This Court concluded that "[f]ollowing the analysis of the Courts in *Hunt, Cincinnati Insurance*, and *Great Lakes Spice*, it appears that the "object of the litigation" is determined by the relief sought by the plaintiff, and the value of the object of the litigation (the amount-in-controversy) is the potential loss to the plaintiff if relief is denied." *Id.* at 20.

Defendant cites to *Bedell v. H.R.C. Ltd.*, 522 F. Supp. 732 (E.D. Ky. 1981), *Family Motor Inn, Inc. v. L-K Enterprises Div. Consolidated Foods Corp.*, 369 F. Supp. 766 (E.D. Ky. 1972), and *Thomas v. General Elec. Co.*, 207 F. Supp. 792 (W.D. Ky. 1962), to support the argument that "when a complaint is silent on damages" the value of the "object of litigation" should be measured from the defendant's point of view. *See* Def. Res. in Opp. at 6.

> In 1981, in the Eastern District of Kentucky, the district court held in *Bedell* that:
> a [viewpoint] that prevails in this district, *and probably the Sixth Circuit....*[is that] the amount in controversy [should be viewed] from the point of view of the party seeking to invoke federal jurisdiction and thus would look to the plaintiff's viewpoint in a case within the federal courts' original jurisdiction, *and to the defendant's viewpoint in a case brought to the federal courts by removal from a state court....*The Eastern District of Kentucky follows this last view, which upon re-examination this court still finds to be the most preferable from the standpoint of logic, practicality and achieving the policies of the statutes creating removal jurisdiction.

*Bedell*, 522 F. Supp. at 735 (emphasis added).

The Court is satisfied that *Bedell's* characterization is not dispositive. The two most recent Sixth Circuit decisions that cite to *Bedell* for this holding (one within the W.D. Mich.) criticized it and adopted the plaintiff's viewpoint approach. *See Southern States Police Benevolent Assn v. Second Chance Body Armor, Inc.*, 336 F. Supp. 2d 731, 735 (W.D. Mich. 2004) ("Although district courts within the Sixth Circuit have

reached different conclusions about the appropriate perspective for valuing injunctive relief, most courts, including two courts within this district, have followed the rule that the value of injunctive relief must be determined from the plaintiff's point of view....Based upon its review of the relevant case law, including the Sixth Circuit's decisions in City of Girard and Goldsmith, the Court concludes that the rule in the Sixth Circuit is that a request for injunctive relief must be valued from the plaintiff's viewpoint in determining the amount in controversy.") (citing *Nelson v. Assocs. Fin. Servs. of Ind., Inc.*, 79 F. Supp. 2d 813, 820 (W.D. Mich. 2000); *United Rentals (North America), Inc. v. Keizer*, 2001 U.S. Dist. LEXIS 3438, 1–11 (W.D. Mich. 2001); *Sherwood v. Microsoft Corp.*, 91 F. Supp. 2d 1196, 1203 (M.D. Tenn. 2000); *McIntire v. Ford Motor Co.*, 142 F. Supp. 2d 911, 922 (S.D. Ohio 2001); *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 258 (E.D. Mich. 2001)); *McIntire v. Ford Motor Co.*, 142 F. Supp. 2d 911, 922 (S.D. Ohio 2001) ("although...decisions in the district courts have demonstrated a divergence of opinions...These other district courts, however, have not cited the Sixth Circuit's decisions in Goldsmith, Pennsylvania R. Co., or Wisconsin Electric....Since the Court concludes it is bound by the Goldsmith decision, the Court also concludes that it must determine the amount in controversy in this litigation from the perspective of the Plaintiffs."). In line with this Court's previous ruling in *Planning, Police* holds that the proper measure of value for the injunction is "the expense to which the plaintiff will reasonably be put through the years [in removing the offending debris if they lose the suit,] and by the value of the right sought to be protected." *Police*, 336 F. Supp. 2d at 735 (emphasis added).

The only Sixth Circuit opinion citing to *Bedell* for its relevant holding is *Morrow v.*

*Cincinnati, New Orleans & Tex. Pac. Ry.*, 29 F. Supp. 2d 443 (E.D Tenn. 1997).

*Morrow* has not been cited by any opinion for any reason. Similar treatment has

befallen *Family Motor. Family Motor Inn, Inc. v. L-K Enterprises Div. Consolidated*

*Foods Corp.*, 369 F. Supp. 766 (E.D. Ky. 1972). The only cases citing to its relevant

holding without criticism are all within the district of Kentucky, and none of them is in the

last fifteen years. Similarly, *Defendant Thomas v. General Elec. Co.*, 207 F. Supp. 792

(W.D. Ky. 1962), the third case cited by Defendant, has had its relevant holding cited

only three times in more than fourty-four years. One of these cases, *Family Motor Inn,*

*Inc. v. L--K Enterprises Div. Consol. Foods Corp.*, 369 F. Supp. 766 (D. Ky. 1973), is

also cited by the Defendant and discussed above. The other two appear to be related

proceedings decided by the same judge in 2007. *See Petrey v. K. Petroleum, Inc.*, 2007

U.S. Dist. LEXIS 51556 (E. D. Ky. 2007); *Clay v. K. Petroleum, Inc.*, 2007 U.S. Dist.

LEXIS 37687 (E. D. Ky. 2007).

Based on recent trends outside the Eastern District of Kentucky, this Court

reaffirms that the value of the object of litigation is to be measured by the cost of

compliance from the plaintiff's point of view, and that defendant must prove that this

amount exceeds the jurisdictional amount by a preponderance of the evidence.

### D) Inappropriate "Value" of the Contract Analysis v. Appropriate Cost of Compliance Analysis

Since much of Plaintiff's argument relies on an attack on the inherent value of

"the contract" as the "object of litigation" by way of its supposed invalidity or

inapplicability, this Court takes this opportunity to further explain and clarify the correct

standard collectively identified in the seminal case of *Gafford* and this Court's previous

14

decision in *Planning.* In *Planning*, this Court relied on *Great Lakes* and *Cincinnati*, and held that consideration of whether a party had no "cognizable property interest" in a building (in that case the object of litigation) was inappropriate to consider when determining the value of the object of litigation because the question went to the merits of the case. *See Planning,* 2005 U.S. Dist. LEXIS 31164, 21. Contrary to the view pursued by Plaintiff, the "object of the litigation" is determined by "the relief sought by the plaintiff, and the value of the object of the litigation (the amount-in-controversy) is the potential loss to the plaintiff if relief is denied, and not by an abstract valuation of the "contract" itself. *Id.* at 20.

> Discussing, the burden of proof on the defendant, *Gafford* found:
>
> [The party claiming federal jurisdiction] must allege in his pleading the facts essential to show jurisdiction. *If he fails to make the necessary allegations he has no standing*. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of *determining whether the facts support his allegations*. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction *precludes the idea that jurisdiction may be maintained by mere averment* or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in an appropriate manner, *he must support them by competent proof*. And where they are not so challenged the court *may still insist that the jurisdictional facts be established or the case be dismissed*, and for that purpose the court may demand that *the party alleging jurisdiction justify his allegations by a preponderance of the evidence*.

*Gafford*, 997 F.2d 150, 160 (emphasis added).

Interpretation of this holding may lead one to believe, as it appears Defendant believed, that "support [by] competent proof" requires the defendant to defend the legal validity and applicability of a contract as the "object of litigation" in order to prove the

value of its rights exceeds $75,000. *Id.*

Adjudication of the merits is not the correct inquiry.  In a case such as this, the "competent proof" required by *Gafford* is proof of the monetary value of the cost of compliance if the court "sided with defendants." *Id; see Great Lakes Spice Co. v. GB Seasonings, Inc.*, 2005 U.S. Dist. LEXIS 9112, 5 (E.D. Mich. 2005).  Proof is limited to different characterizations of the cost of compliance to Plaintiff if this court required enforcement of the contract, not any based on any measurement of the legal likelihood of whether or not or to what extent this Court will choose to do so.  The facts to be proven are more accurately described as the best attempt to identify the most recent and accurate valuation of the cost of compliance.  Instead, Plaintiff attempts to value the abstract "worth" of the "contract" within a legal vacuum.   The "object of litigation" is not the "contract" itself, but the costs associated with its enforcement against the plaintiff to the plaintiff.

In *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818 (6th Cir. 2006), the court was faced with a request to remand after a removal action by defendant.  The court properly applied the preponderance burden identified in *Gafford*.  The claim at issue was a class action seeking injunctive relief.  Without deciding from which point of view it was required to view the object of litigation, the court found:

> Dobson Cellular points to no place in the record estimating the costs of compliance. It suggests that the defendants would have had to change their advertisements, but it does not detail why or how. It offers no evidence of advertisements by the defendants that they did not charge for no-answer or busy-signal calls. And it does not explain why removing a misrepresentation or adding a disclaimer in an advertisement would cost a great amount. It provides no details about the defendants' billing practices, and thus has not shown why a "complete overhaul" of them would be needed and what it would entail. And it has not proved the necessity of reprinting millions of

contracts and why it could not include this information on the materials it already prints and mails (or e-mails) to customers each month. While Dobson Cellular need not show ""to a legal certainty that the amount in controversy met the federal requirement," it must do more "than show[] a mere possibility that the jurisdictional amount is satisfied." *Id.* (footnote omitted);
*Id.* at 829.

As should be clear, this analysis does not focus on the legal merits of the claims, but focuses on the *potential costs of* compliance. The strongest argument for Defendant is not to describe the potential cost from *Defendant's own point of view.* Both parties erroneously assume, that this Court will measure the jurisdictional amount by way of the previous profits of Defendant's former employees now working at Plaintiff business or the value of the salary it paid them.

### E) Appropriate Cost of Compliance Analysis

This Court must determine the value of the potential losses to Plaintiffs if Goldleaf's 1 year non-compete and 18 non-solicitation employment contract provisions are enforced against the three to four specific employees employed by Crestmark when this case was removed. *See Rotschi v. State Farm Mut. Auto. Ins. Co.*, 1997 U.S. App. LEXIS 11771, 7 (6th Cir. 1997) ("The appropriateness of federal jurisdiction in a diversity case is determined at the time of removal.").

Unfortunately, neither party provided proof of that cost. Without providing supporting documentation, Defendant asserted that it paid the employees far in excess of $75,000 during their last year of employment, and that the business section they were employed in recently grossed profits above $75,000. *See* Df. Res. at 6. Crestmark's only direct challenge to this valuation is that the contracts are "worth" little or nothing because they are invalid. *See* Pl. Bf. in Rep. at 10.

17

However, Defendant has not submitted testimony nor supplied the Court with affidavits specifically articulating the potential losses to Plaintiff resulting from enforcement of the employment contracts. Without evidence, this Court cannot simply assume the annual salary of the employees at issue, nor can it assume the profits of either party's business and simply take Defendant's unsupported assertions. *See Everett*, 460 F.3d at 829; *see also Pucket Machinery Company Inc. v. United Rentals Inc*, 342 F. Supp. 2d 610, 615 (S.D. Miss. 2004). As a result, this Court cannot find that the jurisdictional amount has been met.

There are a variety of forms of "competent" evidence available to Defendant that this Court can consider in measuring the jurisdictional amount. In *Planning*, this Court found that "at least one measure" of the cost of compliance of the enforcement of a lien on property was the loss of the market value of the property. *See Planning*, 2005 U.S. Dist. LEXIS at 20. The parties submitted different arguments as to the correct and/or most accurate measurement, and this Court determined that the best submitted evidence was the recent market value from a tax evaluation by the City of Detroit. *See id.* at 21. Here, this Court can likewise look to the most recent appraisal of the value of these employees: their contractual annual salary at their new place of employment.

A case cited by Defendant supports this approach. In *Component Management Services, Inc. v. America II Electronics, Inc.,* 2003 WL 23119152 (N.D. Tex. 2003), the court employed a methodology that this Court finds most appropriate to the case before it. *Component* similarly dealt with the issue of the jurisdictional amount in a removed non-compete employment contract case in which plaintiff sought remand and

declaratory relief holding the contract invalid. The court first noted that it was not "facially apparent" that the jurisdictional amount was met, and found that the next step was for "the court [to] rely on affidavits and other 'summary judgment-type' evidence to ascertain the amount in controversy." *Id.* at 1.

> The court in *Component* found although:

> [b]oth parties have briefed extensively the issues of whether [they are in] competition...and whether...confidential business information [is at] risk....these issues *go to the merits* of the underlying declaratory judgment action (i.e., whether certain parts of the Sales/Purchasing Agreement affect CMS's right to employ Smith), and this Court finds it both unnecessary and premature to resolve these issues in ruling on this Motion.

*Id.* at 2. (emphasis added). The court went on to conclude "an employee's salary is a reasonable measure of the value of the employee to the employer, and the facts in this case allow for a more precise calculation of the value of CMS's right to employ Smith." *Id.* The court specifically outlined the means by which the value in the case could be calculated. The court calculated the weeks the employee was employed during the time covered by the defendant's non-compete contract, and multiplied this number by the employee's weekly salary:

> In this case, Smith resigned from [Defendant company] on January 31, 2001. Thus, the two-year non-compete clause of the Sales/Purchasing Agreement was effective at least until January 31, 2003. Even assuming that the only provision at issue in this case is the non-compete clause (and not the ongoing confidentiality clause), the amount in controversy would be equal to at least the value of Smith's employment while the non-compete clause was still in effect (i.e., from May 1, 2002 to January 31, 2003). [Defendant] has presented evidence in the form of deposition testimony that Smith's salary at [Plaintiff company] is $6,700 per month, or approximately $80,400 per year. Based on these figures, "the value of the right to be protected" is at least $65,325 (39 weeks x $1,675/week). *See Amtech Inc. v. Qualitek International, Inc.,* 2002 U.S. Dist. LEXIS 1217,

*21-23 (N.D.Ill.2002) (presented with similar facts, the court determined the amount in controversy by calculating the amount of wages the employee would have received while the contested restrictive covenant was in effect).

*Id.*

In *Component*, the court calculated from the first day of the employee's employment until the end of the period potentially covered by the contract at issue. *See id.* at 1. Applying this approach to the case before it is the most precise means for this Court to measure the value of the object of litigation.

## IV. CONCLUSION

For Defendant to produce this type of evidence would require the parties to engage in discovery. In lieu of that, the Court orders Plaintiff to submit documents or affidavits detailing the weekly salary of each of the three to four former Goldleaf employees employed by Plaintiff at the time of removal, the amount of weeks they have worked, and the amount of weeks remaining on their current employment contracts. If such evidence shows that the cumulative weekly wages of the employees between their hire date and the end of the potential application of the non-compete agreement exceeds $75,000, Defendant will have definitively met the requirements of their burden and will prove the jurisdictional amount by a preponderance of the evidence.

This Court also invites the parties to submit documents or affidavits establishing any additional costs to Plaintiff from enforcement of the employment contract (including the effect of the 18 month non-solicitation provision). If upon review of this Order Plaintiff concedes the cumulative weekly wages of the former Goldleaf employees, plus any additional contract enforcement costs to Plaintiff, exceeds $75,000, Plaintiff can

simply notify the Court and the Court will enter its Order Denying Motion for Remand.

Plaintiff has until September 20, 2007 to submit wage and cost information, or to notify

the Court that wages and costs at issue exceed $75,000.  The Court holds it Order on

this motion in abeyance.

**IT IS ORDERED.**

 /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 11, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 11, 2007.


   /s/ Linda Vertriest
Deputy Clerk